# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

GRADY J.M.,[1]                                    Case No. 2:22-cv-3883
     Plaintiff,                              Litkovitz, M.J.

vs.

COMMISSIONER OF                          **ORDER**
SOCIAL SECURITY,
     Defendant.

Plaintiff Grady J.M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for

judicial review of the final decision of the Commissioner of Social Security ("Commissioner")

denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental

security income ("SSI").  This matter is before the Court on plaintiff's Statement of Errors (Doc.

10), the Commissioner's response in opposition (Doc. 12), and plaintiff's reply memorandum.

(Doc. 13).

## I. Procedural Background

Plaintiff protectively filed his applications for DIB and SSI on October 6, 2020, alleging

disability since December 2, 2018, due to posttraumatic stress disorder ("PTSD"), epilepsy,

depression, anxiety disorder, ankle and foot problems, restless leg syndrome, brain injury from

smoke inhalation, visual and auditory hallucinations, and alcohol dependence in remission.  (Tr.

240, 250-257).  The applications were denied initially and upon reconsideration.  Plaintiff,

through counsel, requested and was granted a *de novo* hearing before administrative law judge

("ALJ") Matthew Winfrey.  Plaintiff and a vocational expert ("VE") appeared telephonically and

testified at the ALJ hearing on November 8, 2021.  (Tr. 38-62).  On December 6, 2021, the ALJ

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

issued a decision denying plaintiff's DIB and SSI applications.  (Tr. 16-37).  This decision

became the final decision of the Commissioner when the Appeals Council denied review on

August 31, 2022.  (Tr. 1-7).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable

physical or mental impairment that can be expected to result in death or that has lasted or can be

expected to last for a continuous period of not less than 12 months.  42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A).  The impairment must render the claimant unable to engage in the work

previously performed or in any other substantial gainful employment that exists in the national

economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation

process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four

2

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2019.

2. The [plaintiff] has not engaged in substantial gainful activity since December 2, 2018, the alleged disability onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The [plaintiff] has the following severe impairments: epilepsy; bilateral congenital valgus deformities of the feet status post right ankle fracture with repair and left foot fracture; bilateral tibial tendinitis; anxiety; major depressive disorder; post-traumatic stress disorder (PTSD); schizophrenia spectrum disorder; and alcohol dependence in remission (20 CFR 404.1520(c) and 416.920(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the [plaintiff] would have no more than occasional right foot controls and no more than occasional pushing or pulling with the right lower extremities. He could occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. He could have no exposure to workplace hazards, such as unprotected heights, or dangerous unprotected moving mechanical parts. No occupational driving. The [plaintiff] is limited to work that is not at a production rate pace, such as

3

one has with assembly line work.  Can tolerate occasional interactions with supervisors, coworkers, but no interaction with the public.  He is limited to simple routine tasks, with no more than occasional changes in duties and work setting.

6. The [plaintiff] is capable of performing past relevant work as a Cleaner.  This work does not require the performance of work-related activities precluded by the [plaintiff]'s residual functional capacity (20 CFR 404.1565 and 416.965).[2]

7. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from December 2, 2018, through the date of this decision (20 CFR 404.1520(f) and 416.920(f)).[3]

(Tr. 22-30).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.  *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. __, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir.

---

[2] Plaintiff's past relevant work was as a foundry worker, a medium, unskilled position, and as a cleaner, a light, unskilled position.  (Tr. 31, 58).

[3] The ALJ also made an alternative finding that plaintiff could perform other jobs that exist in significant numbers in the national economy.  (Tr. 31).  The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium-exertion occupations such as stocker (100,000 jobs in the national economy) and hand packager (90,000 jobs in the national economy).  (Tr. 32, 59).

2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D.  Specific Errors**

In his Statement of Errors, plaintiff alleges the ALJ erred by (1) not finding Listings 12.03 and 12.04 were met; and (2) dismissing the opinions of Dr. Michelle Garber and Liz Sutherland LSW as not persuasive.  (Doc. 10).

**1.  The ALJ's step three finding is not supported by substantial evidence.**

Plaintiff alleges the ALJ erred at step three of the sequential evaluation process by failing to find plaintiff's impairments met Listing 12.03 for schizophrenia spectrum and Listing 12.04 for depressive and bipolar disorders.  Plaintiff alleges he meets the "A" and "C" criteria of both Listings, and the ALJ's finding to the contrary is not supported by substantial evidence.

The Commissioner argues the ALJ properly evaluated plaintiff's impairments under the medical listings, and the ALJ's step three finding is supported by substantial evidence.  The Commissioner points out that plaintiff does not contest the ALJ's finding on the part "B" criteria of Listings 12.03 and 12.04, which was the specific issue his counsel argued at the administrative hearing.  The Commissioner asserts the ALJ's minimal discussion of the "C" criteria is understandable, given plaintiff's arguments at the hearing, and in any event substantial evidence supports the ALJ's conclusion.

The ALJ determined that plaintiff had severe mental impairments of anxiety, major depressive disorder, post-traumatic stress disorder, schizophrenia spectrum disorder, and alcohol dependence in remission. (Tr. 22). The ALJ evaluated the severity of plaintiff's mental impairments under Listings 12.03, 12.04, 12.06, and 12.15, each of which requires evidence of the "A", "B", and "C" criteria of the respective Listings. Without discussing whether plaintiff met the "A" criteria of these Listings, the ALJ determined that plaintiff did not meet or medically equal the Listings because the "paragraph B" criteria were not satisfied. (Tr. 23-25). The "B" criteria of the Listings requires extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A2b. The ALJ found that plaintiff was only "moderately" limited in the "B" criteria and therefore did not meet the Listings. (Tr. 24). The ALJ also stated that he considered whether the "paragraph C" criteria were satisfied. The ALJ stated, "In this case, the evidence fails to establish the presence of the 'paragraph C' criteria." (Tr. 25). The ALJ provided no further discussion or analysis of the "C" criteria.

Plaintiff challenges the ALJ's decision with respect to Listings 12.03 and 12.04. Listing 12.03 governs schizophrenia spectrum and other psychotic disorders (see 12.00B2). Plaintiff alleges he meets the A and C criteria, which require:

A. Medical documentation of <u>one</u> or more of the following:

1. Delusions or hallucinations;
2. Disorganized thinking (speech); or
3. Grossly disorganized behavior or catatonia.

AND

. . . .

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see12.00G2b); <u>and</u>

    2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03.

Listing 12.04 governs depressive disorders.  The A and C criteria of this Listing require:

A.  Medical documentation of the requirements of paragraph 1 . . . :

    1.  Depressive disorder, characterized by <u>five</u> or more of the following:
        a.  Depressed mood;
        b.  Diminished interest in almost all activities;
        c.  Appetite disturbance with change in weight;
        d.  Sleep disturbance;
        e.  Observable psychomotor agitation or retardation;
        f.  Decreased energy;
        g.  Feelings of guilt or worthlessness;
        h.  Difficulty concentrating or thinking; or
        i.  Thoughts of death or suicide.

AND

. . . .

C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

    1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see12.00G2b); <u>and</u>

    2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see12.00G2c).

*Id*. at § 12.04.

At step three of the sequential evaluation process, plaintiff carries the burden to show that he has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpart P, App. 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If a claimant meets all of the criteria of a listed impairment, he is disabled; otherwise, the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(d)-(e), 416.920(d)-(e); *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also Rabbers,* 582 F.3d at 653 (citing 20 C.F.R. § 404.1525(c)(3)) ("A claimant must satisfy all of the criteria to meet the listing.").

In evaluating whether a claimant meets or equals a listed impairment, an ALJ must "actually evaluate the evidence, compare it to [the relevant listed impairment], and give an explained conclusion, in order to facilitate meaningful judicial review." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). Otherwise, "it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* (citations omitted). The ALJ "need not discuss listings that the [claimant] clearly does not meet, especially when the claimant does not raise the listing before the ALJ." *Sheeks v. Comm'r of Soc. Sec.*, 544 F. App'x 639, 641 (6th Cir. 2013). "If, however, the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing, the ALJ should discuss that listing." *Id.* (quoting *Abbott v. Sullivan*, 905 F.2d 918, 925 (6th Cir. 1990)); *see also Reynolds*, 424 F. App'x at 415-16 (holding that the ALJ erred by not conducting any step-three evaluation of the claimant's physical impairments where the ALJ found that the claimant had the severe impairment of back pain, and the claimant had put forth evidence that could meet the applicable Listing).

8

Where an ALJ does not discuss a particular Listing, the Court "must determine whether the record evidence raises a substantial question as to [a claimant's] ability to satisfy each requirement of the listing." *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 433 (6th Cir. 2014). To raise a substantial question, "[a] claimant must do more than point to evidence on which the ALJ could have based" her Listing finding. *Id*. at 432 (quoting *Sheeks*, 544 F. App'x at 641-42). "Rather, the claimant must point to specific evidence that demonstrates he reasonably could meet or equal every requirement of the listing." *Id*. (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id*. at 433; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (finding harmless error in the ALJ's unexplained step-three findings where the claimant did not show that he could reasonably meet or equal a Listing's criteria).

Plaintiff does not dispute the ALJ's finding that the "B" criteria applicable to Listings 12.03 and 12.04 are not met. Nevertheless, plaintiff argues the medical record satisfies both the "A" and "C" criteria of Listing 12.03 and 12.04, and the ALJ erred by not finding plaintiff disabled at step three of the sequential evaluation process.

The ALJ did not discuss whether plaintiff met the paragraph A criteria of both Listings 12.03 and 12.04. Therefore, the Court examines whether plaintiff has raised a substantial question as to whether he satisfies the A criteria of both Listings.

Listing 12.03A requires medical documentation of delusions or hallucinations. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03A1. The record is replete with notes from plaintiff's community psychiatric supportive treatment at The Main Place, a health and wellness center, documenting auditory and visual hallucinations since at least September 30, 2019 (Tr. 746-764)

9

and thereafter (auditory hallucinations: Tr. 327, 335, 347, 439, 443, 447, 451, 455, 459, 463, 467, 471, 475, 479, 483, 761); (visual hallucinations: Tr. 339, 343, 351, 355, 363, 367, 379, 391, 395, 467, 471, 475, 479, 483); *see also* Tr. 67-68 (the agency's summary of the medical evidence at the initial level).  The evidence further shows that plaintiff suffers from religious and persecutory delusions.  (Tr. 434, 438, 442).  Plaintiff has raised a substantial questions as to whether he satisfies the "paragraph A" criteria of Listings 12.03 for schizophrenia spectrum.

Listing 12.04A requires medical documentation of five or more characteristics of depressive disorder.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A1.  Counseling notes from as far back as September 30, 2019 (Tr. 761) reflect mental status examination findings of depressed mood (*see, e.g.*, Tr. 402, 422, 430, 438, 442, 446, 450, 454, 458, 462, 466, 470, 474, 478, 482, 706, 761, 864, 871, 879, 884); impairment of memory, attention, and concentration (Tr. 403, 423, 431, 435, 439, 443, 447, 451, 455, 459, 463, 467, 471, 475, 479, 483, 688 [needed consistent redirection to stay on topic]; 707, 711, 715, 719, 761); agitation (Tr. 67-68, 458, 466, 470, 474, 686, 688, 690, 702, 706, 710); long-standing sleep disturbances (Tr. 67-68, 306, 324, 325, 758, 857, 864, 868, 870, 871, 872, 875, 878, 885, 892, 896); reports that plaintiff isolates, becomes "anti-social," loses interest in most things, and struggles to be able to do the things he enjoys (Tr. 756; 732); uses avoidance as a coping strategy (Tr. 688, 716, 720, 724, 728, 732); struggles to leave his home and feels guilty (Tr. 724, 729, 740, 744); and feels helpless about his life situation (Tr. 709).  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04A1.  Plaintiff has raised a substantial question that he meets Listing 12.04A for depressive disorder.

Listings 12.03C and 12.04C require evidence of a "serious and persistent" mental disorder and both: "(1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your

10

mental disorder (see 12.00G2b); and (2): Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c)."  20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.03C, 12.04C.  The introductory paragraphs to the 12.00 Mental Disorders Listings for Adults explain:

> The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D).  We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00G2b.  They continue:

> The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.  We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D).  Such deterioration may have necessitated a significant change in medication or other treatment.  Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00G2c.

In this case, the evidence described above indicates plaintiff has a medically documented history of schizophrenia spectrum disorder and depressive disorder since September 30, 2019—a period of at least 2 years—raising a substantial question that he satisfies the introductory paragraphs of Listings 12.03C and 12.04C.  In addition, the evidence cited above shows plaintiff consistently received mental health therapy on a weekly basis and case management services to diminish the symptoms of his schizophrenia spectrum and depressive disorders from counselors

at The Main Place center, again raising a substantial question as to whether plaintiff could satisfy the Listings 12.03C1 and 12.04C1 criteria.

Finally, the record contains specific evidence that demonstrates plaintiff reasonably could meet or equal the C2 requirements of the relevant Listings. The evidence shows that despite consistent therapy, strategies, and medication changes[4] to address plaintiff's mental health symptoms, he has achieved only marginal adjustment for purposes of Listing 12.03C2 and 12.04C2. Plaintiff has received weekly counseling from Elizabeth Sutherland, LSW, at The Main Place center from October 2019 through at least September 2021. Over that time period, plaintiff consistently had difficulty leaving his home, which was exacerbated by his avoidance of his PTSD (avoiding thinking of past trauma [a house fire at age seven resulted in a brain injury and seizures (Tr. 747; see also Tr. 289-90)[5]; his foot was amputated and reattached at age 14 (Tr. 757); he "relives" mental and physical abuse and feels the pain; during flashbacks he smells the fire (Tr. 757)]). Ms. Sutherland reported that plaintiff avoided past trauma and depression and hallucination through use of alcohol, though he has stopped drinking most of the time. (Tr. 744). Ms. Sutherland also reported that plaintiff was having difficulty with isolating and increased symptoms, including increases in auditory hallucinations, which were related to his PTSD. (Tr. 441, 449, 465, 477, 481). She reported that his hallucinations decreased on the days when he

---

[4] Plaintiff's prescription medications were prescribed and adjusted by PA-C Michelle Garber. (Tr. 865, 868, 871, 873, 875, 878, 888, 896, 898).
[5] PA-C Garber reported on May 4, 2020 that:

> [She] spoke extensively with his counselor Liz [Sutherland]. [Liz] has really delved into his childhood with him and his PTSD. He's also schizophrenic, unspecified with visual and auditory hallucinations and even smells come back to him. States he sees/hears/smells memories regarding the fire and the vents that caused it. He doesn't sleep for days and then this will make his hallucinations and disorganized thoughts worse. Sleep is going to be crucial in his healing and his control of the mood disorder(s) he has. He's sober from alcohol.

(Tr. 870).

was able to leave his house to get a lunch at The Main Place center.  (Tr. 457, 465, 474).

Plaintiff's lack of sleep "put him on edge" and increased his visual hallucinations, which were

more vivid and led to frustration and agitation prompting plaintiff to seek additional sleep

medication.  (Tr. 469).  His hallucinations were a trigger for depression and anxiety.  (Tr. 472).

Ms. Sutherland reported that grounding techniques helped to manage plaintiff's hallucinations at

times, and logical and positive self-talk helped plaintiff from breaking his phone.  (Tr. 473).  Ms.

Sutherland worked with plaintiff to help him understand that "his belief that 'forces were at

work' to prevent him from overcoming barriers was a cognitive distortion."  (Tr. 473).

In April 2020, plaintiff received new sleep medications from his primary care provider,

but did not help with his night terrors and nightmares.  (Tr. 457, 474).  He struggled to stay on

track and focus consistently and related ruminating thoughts.  (Tr. 484).  Ms. Sutherland reported

plaintiff was "making minimal progress and scheduled an additional appointment" for him.  (Tr.

484).  He struggled to identify anything positive that happened to him at times, and his belief that

people were persecuting him added to his frustration and agitation.  (Tr. 661).  Loneliness

increased hallucinations and depression, and he struggled "to shut them [hallucinations] off."

(Tr. 669, 672).

In July 2020, plaintiff continued to struggle with sleep and increased hallucinations, and

stated his hallucinations "are not hallucinations, they are real and making him paranoid."  (Tr.

677).  He related he saw "shadow people" for many years and wondered why no one else saw

them.  (Tr. 677).  Plaintiff related that he was being monitored by others, and Ms. Sutherland

assisted with identifying this as distorted thinking.  (Tr. 680).  His paranoia had been increasing

over the previous two weeks, and believed he was being monitored over the phone.  (Tr. 681).

He was able to complete one grounding technique but struggled with using a second technique.

(Tr. 681).  He agreed to an additional counseling session.  (Tr. 681).  At times, he had to be consistently redirected to stay on topic and was fixated on past hurt and harms.  (Tr. 688).  He reported experiencing increased paranoia and hallucinations, as well as increased anxiety that was triggered by receiving housing paperwork that he did not understand, which in turn exacerbated his other symptoms.  (Tr. 693).

> In August 2020, Ms. Sutherland reported:
>
> [Plaintiff] was able to relate that he feels on edge and paranoid.  [He] related that he begins to have one thought and this then leads to another thought and then he feels paranoid and unable to function.  [He] agreed to try thought stopping when the paranoia first begins.  [He] agreed that he would try transferring his grounding skills to his paranoia difficulties and see if this helped him to refocus.  [He] related he is beginning to understand how his thoughts are affecting his emotions.

(Tr. 696-97).  Ms. Sutherland scheduled an additional appointment after this session.  At another session in August 2020, she reported plaintiff had ongoing difficulty with paranoia and related some increase in this area.  She reported that when things were not going as planned, plaintiff becomes paranoid:

> [H]e ends up feeling that the devil is creating problems for him on purpose.  Client further related that he feels the problems he is having with his phone are due to the devil not wanting him to get better or to receive help.  Client stated that he struggles between what he believes as far as the devil and the reality.  Client related that as far as his paranoia concerns it becomes more difficult, because they all feel like they are intertwined and inseparable at times.  Client was able to relate that when his anxiety increases his paranoid thinking increases as well.

(Tr. 701).  He continued to struggle to leave his home (Tr. 724, 729, 732, 373 [left home once that week but had a panic attack], 740, 744) and felt simultaneously lonely and the need to withdraw from everyone.  (Tr. 732).

> In November 2020, counseling notes reflect:
>
> Client related he continues to struggle with anxiety and auditory hallucinations. Client stated he feels he is becoming more withdrawn and has been purposely

isolating.  Client related that he feels that he had to force himself to leave the home
and this is stressful for him.

(Tr. 739).

In December 2020, Ms. Sutherland completed a mental capacity assessment.  She

assessed plaintiff as markedly or extremely limited in 16 areas of functioning.  She reported:

> [Plaintiff] struggles to remember information discussed in session from week to
> week.  [He] often calls back to question information and be able to follow through
> on tasks beyond one step.  [He] writes his information down to assist in
> remembering.

(Tr. 833).  She also reported that plaintiff "appears to struggle with tasks on a consistent basis

and has often struggled with using his cellphone.  [He] has forgotten to hang up the phone on

multiple occasions."  (Tr. 834).  In terms of his ability to adapt or manage himself, Ms.

Sutherland reported:

> [Plaintiff] struggles to understand and manage changes as they occur.  He has
> difficulty in processing outside stimulae that affect him emotionally or cause an
> increase in his symptoms.  [He] quite often sets unrealistic goals and struggles with
> understanding why this did not work out.

(Tr. 834).  Ms. Sutherland also reported that in terms of interacting with others, plaintiff

"struggles with paranoid thinking and this interferes with his social interactions and his ability to

accept criticism and suggestions."  (Tr. 835).  When asked whether plaintiff has the ability to

voluntarily control the use of alcohol or other substances, she reported, "To a certain extent when

the voices get loud enough he struggles with not trying to drown them out with alcohol and will

drink at that time."  (Tr. 835).  Ms. Sutherland's mental capacity assessment in September 2021

was similar.  (Tr. 1055-1057).

The ALJ concluded that "the evidence fails to establish the presence of the 'paragraph C'

criteria" (Tr. 25) for the mental health Listings, but he provided no explanation or analysis for

this conclusion.  The evidence cited above strongly suggests plaintiff has a "minimal capacity to

15

adapt to changes in [his] environment or to demands that are not already part of [his] daily life"

and that "changes or increased demands have led to exacerbation of [his] symptoms and signs

and to deterioration in his functioning."  20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00G2c

(describing "Marginal Adjustment" for purposes of the C2 criteria).  As plaintiff has amply

shown that he reasonably could meet or equal every requirement of Listings 12.03 A and C and

12.04 A and C, the Court finds the ALJ's step three finding is not supported by substantial

evidence and must be reversed and remanded for further proceedings.

> **2.  The ALJ's evaluation of the opinions of Liz Sutherland, LSW, is not supported by substantial evidence but his evaluation of the opinions of PA-C Michelle Garber is supported by substantial evidence.**

For claims filed on or after March 27, 2017, new regulations apply for evaluating medical

opinions.  *See* 20 C.F.R. § 404.1520c (2017); *see also* 82 Fed. Reg. 5844-01, 2017 WL 168819

(Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar.

27, 2017)).[6]  These new regulations eliminate the "treating physician rule" and deference to

treating source opinions, including the "good reasons" requirement for the weight afforded to

such opinions.[7]  *Id.*  The Commissioner will "not defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s) or prior administrative medical

---

[6] "The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical . . . and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively."  *Miller v. Comm'r of Soc. Sec.*, No. 3:18-cv-281, 2019 WL 4253867, at *1 n.1 (S.D. Ohio Sept. 9, 2019) (quoting *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007)).  The Court's references to DIB regulations should be read to incorporate the corresponding and identical SSI regulations for purposes of this Order.

[7] For claims filed prior to March 27, 2017, a treating source's medical opinion on the issue of the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(c)(2).  *See also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013).  "The Commissioner is required to provide 'good reasons' for discounting the weight given to a treating-source opinion."  *Id.* (citing 20 C.F.R. § 404.1527(c)(2)).

finding(s),[8] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c(b).

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[9] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ

---

[8] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[9] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

As discussed above, plaintiff's counselor Liz Sutherland opined plaintiff was markedly or extremely limited in 16 areas of mental functioning. The ALJ determined Ms. Sutherland's opinions were not persuasive:

> The opinions of the claimant's counselor Liz Sutherland, LSW, are not persuasive as the evidence does not support such extreme limitations as opined (Exhibits 6F; 13F). Such opinions are not consistent with reports that the claimant was the caretaker for his late father and volunteering (Exhibit 3F/3, 47) [Tr. 488, 532]. Additionally, the overall evidence repeatedly showed at least partially normal mental status examinations. Though the claimant exhibited anxiety, anger, and sometimes an impairment in memory and/or attention and concentration, he was repeatedly noted to be well groomed, cooperative, and with full affect, though at times he was noted to be angry and have hallucinations, delusions, and/or an impairment of memory and/or attention and concentration (Exhibits 2F; 3F; 4F) [Tr. 326-829]. Even when this occurred, he was noted to be able to give information needed to complete paperwork, he was noted to ask appropriate questions, and he was able to be directed to complete tasks. At other times he was alert, oriented, and with normal mood, behavior, thought content, and judgment.

(Tr. 30).

The ALJ failed to properly address the supportability and consistency factors under 20 C.F.R. § 404.1520c(b)(2). The regulations require the ALJ to explain how he considered both the consistency and supportability of Ms. Sutherland's opinions. 20 C.F.R. § 404.1520c(b)(2). *See Shields v. Comm'r of Soc. Sec.*, 732 F. App'x 430, 440 (6th Cir. 2018) ("[A]n ALJ's failure to follow agency procedures does not constitute harmless error when it prevents us from meaningfully reviewing his or her decision. . . ."). *See also Jenna B. v. Comm'r of Soc. Sec. Admin.*, No. 3:21-cv-00176, 2022 WL 4395682, at *6 (S.D. Ohio Sept. 23, 2022) (ALJs are "required to explain their evaluation of the supportability and consistency factors. [20 C.F.R. § 404.1520c(b)(2)]. The regulation therefore imposes a burden of explanation, or mandatory

18

articulation, upon ALJs"). The ALJ's explanation of the persuasiveness of Ms. Sutherland's opinions does not permit meaningful review in this case.

The ALJ first reasoned that Ms. Sutherland's opinions were not consistent with the record evidence because he was the caretaker for his late father and volunteering. (Tr. 30). Plaintiff's case manager reported that plaintiff "has hel[d] seasonal jobs; but nothing more in quite some time due to being a caretaker for his disabled father." (Tr. 488). However, plaintiff's father passed away some six months before Ms. Sutherland did her initial intake in September 2019 with plaintiff, who was homeless and living at a shelter. (Tr. 747). The Court is unable to discern how plaintiff's ability to take care of his father over six months prior to initiating mental health therapy with Ms. Sutherland detracts from her opinions based on nearly two years of weekly therapy sessions and observations thereafter.[10] Likewise, the ALJ's citation to plaintiff's "volunteering" is in connection with a December 2019 meeting with his case manager, who stated that plaintiff was "struggling mentally" and "appears run down and overwhelmed" but he was "volunteering and applying for employment positions." (Tr. 532). The record does not indicate the nature of plaintiff's "volunteer" work, or whether he in fact engaged in any volunteerism any time after he began therapy with Ms. Sutherland. Without any clarification or explanation by the ALJ, the Court cannot discern a substantial basis for the ALJ's purported "consistency" evaluation.

In addition, the ALJ's supportability analysis is not supported by substantial evidence. As an initial matter, Ms. Sutherland set forth the medical and clinical findings to support her assessments directly on the mental capacity assessment forms she completed. (Tr. 833-835; 1055-1057). The regulations provide that "[t]he more relevant the objective medical evidence

_____

[10] The Court acknowledges that this evidence may be relevant to a determination of the onset date of disability, but it does not detract from Ms. Sutherland's opinions for the time period during which she treated plaintiff.

and *supporting explanations* presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) (emphasis added). The ALJ never addressed the supporting explanations provided by Ms. Sutherland to enable this Court to meaningfully review the ALJ's decision.

The ALJ correctly looked to Ms. Sutherland's own records in addressing the supportability factor. *See id.* The ALJ appeared to reason that although plaintiff displayed anxiety, anger, "sometimes" an impairment in memory and/or attention and concentration, hallucinations, and delusions, Ms. Sutherland's opinion was not supported because plaintiff was "well groomed, cooperative, and with full affect" at other times. (Tr. 30). The ALJ seemed to intimate that the "partially normal mental status examination" findings outweigh the other mental status exams findings cited by Ms. Sutherland that support her opinions of plaintiff's functioning. The ALJ failed, however, to explain how these "partially normal" findings—being well groomed, cooperative, and with full affect—detract from the other abnormal mental status exam findings the ALJ acknowledged. For example, the ALJ seems to suggest that it is inconsistent for a person suffering from schizophrenia or depression to be "well groomed" or "cooperative." The Court is aware of no support for such a proposition. The Court is unable to discern how the "partially normal" mental status exam findings, in the context of Ms. Sutherland's other findings and treatment records, substantially support the ALJ's persuasiveness finding.

Finally, the ALJ stated Ms. Sutherland's opinions were not supported because plaintiff was "able to give information needed to complete paperwork, he was noted to ask appropriate questions, and he was able to be directed to complete tasks." (Tr. 30). The Court is simply

unable to discern how being able to give information, ask questions, and be able *to be directed* to complete tasks—with no evidence on whether plaintiff had the ability to actually complete tasks[11]—substantially supports the ALJ's finding. In the absence of a sufficient explanation of his supportability finding, the Court cannot conclude that the ALJ's consideration of Ms. Sutherland's opinions is supported by substantial evidence.[12]

Plaintiff also challenges the ALJ's persuasiveness finding on PA-C Garber's opinions. Ms. Garber's November 2020 physical assessment indicated plaintiff was able to sit and/or walk for 4 hours out of an eight-hour workday; was limited in his ability to use his hands, fingers, and arms; would need to take several unscheduled breaks throughout the average workday; and would likely be absent from work four or more times per month. (Tr. 831-32). In October 2021, Ms. Garber opined that plaintiff was able to sit for two hours and stand/walk for one hour in an eight-hour workday; he no longer had any restrictions doing repetitive reaching, handling or fingering; he would require several unscheduled breaks throughout the workday; his impairments would constantly get in the way of work-related tasks; and he would likely be absent for four or more days per month due to those impairments. (Tr. 1069-1070).

The ALJ found Ms. Garber's opinions to be not persuasive:

The opinions of the claimant's provider Michelle Garber, PA-C, are not persuasive as the evidence does not support such extreme limitations as opined (Exhibits 5F; 15F) [Tr. 833-35, Tr. 1069-70]. Ms. Garber opines to several restrictive limitations, such as needing to take unscheduled breaks; however, these opinions are not supported by the overall largely normal physical examinations described above. The claimant reported minimal seizures, with none documented via diagnostic testing. He was noted to respond well to Keppra medication. Physical examinations repeatedly showed normal strength and gait. Though at times he was

---

[11] Ms. Sutherland's supporting explanation in her mental capacity assessment is to the contrary. (Tr. 833) ("[Plaintiff] often calls back to question information and to be able to follow through on tasks beyond one step.").

[12] The Court notes that the Commissioner's references to record evidence consistent with the ALJ's supportability finding (Doc. 12 at PAGEID 1153) is unavailing, as these were not reasons given by the ALJ for his decision. *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

noted to have diminished muscle reflexes, they were symmetric bilaterally and sensation remained within normal limits.  Thus, the undersigned finds that the evidence does not support the extreme limitations opined by Ms. Garber, and instead, the evidence is supportive of the residual functional capacity herein.

(Tr. 30).

Plaintiff argues the ALJ erred in finding Ms. Garber's opinions not persuasive because the ALJ failed to cite any specific examples from the record detailing these normal examinations. (Doc. 10 at PAGEID 1128-29).  Although plaintiff is correct that the ALJ did not cite specific medical evidence in the section evaluating Ms. Garber's opinions, the ALJ nevertheless thoroughly examined plaintiff's treatment history with Ms. Garber and others in his decision. (Tr. 26-27).  "When evaluating consistency, the [Court] looks to the ALJ's immediate discussion regarding [the] opinion, and also to h[er] discussion of the record elsewhere in the opinion.  This is because the ALJ's opinion ought to be read as a whole." *William G. v. Comm'r of Soc. Sec.*, No. 2:22-cv-213, 2022 WL 4151381, at *8 (S.D. Ohio Sept. 13, 2022) (Report and Recommendation), *adopted*, 2022 WL 16745337 (S.D. Ohio Nov. 7, 2022) (citing cases).  The ALJ's discussion of the medical evidence and clinical findings in connection with plaintiff's seizure impairment and bilateral foot conditions (Tr. 26-27) provides substantial support for the ALJ's finding.

Finally, plaintiff argues the ALJ failed to address Ms. Garber's supporting explanations for plaintiff's limitations.  Contrary to plaintiff's contentions, Ms. Garber's physical assessments do not contain explanations for the opined limitations.  To the extent plaintiff argues Ms. Garber's treatment notes support her opinions, plaintiff points to his treatment history with Ms. Garber, her various diagnoses, and prescribed medications.  (Doc. 10 at PAGEID 1128). Plaintiff argues, "It is evident how [Ms.] Garber could come to the conclusions opined in her physical assessments based on more than three years of meetings with and prescribing

medication for [plaintiff]. It is only natural that a person suffering from chronic pain in their neck, hands, and arms would have these pains [and] get in the way of their job-related tasks." (*Id.*). While plaintiff is correct that Ms. Garber *could* have come to these conclusions based on the reasons posited by plaintiff, she did not make this connection either in the physical assessment forms or in her treatment records. The Court finds no error in the ALJ's assessment of the persuasiveness of Ms. Garber's opinions.

**III. This matter is reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter is reversed and remanded for further proceedings with instructions to the ALJ to reevaluate whether plaintiff meets or equals Listings 12.03 and 12.04 and to reevaluate Ms. Sutherland's opinions in accordance with this decision; to reassess plaintiff's RFC, if necessary; and for further medical and vocational development as warranted.

Based on the foregoing, plaintiff's statement of errors (Doc. 10) is **SUSTAINED in part and OVERRULED in part**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.

Date:   3/11/2024                                    Karen L. Litkovitz
                                                      Chief United States Magistrate Judge